UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

GERALD WALKER,
also known as Jerard Walker,
also known as Jacaun Steele,

        Petitioner,

V.

THOMAS RICKS,

        Respondent.

**REPORT AND RECOMMENDATION**

02-CV-790

---

# I. INTRODUCTION

Petitioner Gerald Walker, acting *pro se*, commenced this action seeking habeas corpus relief under 28 U.S.C. § 2254. Petitioner is an inmate at the Attica Correctional Facility. In 1998, he was convicted in a New York State court of Murder in the Second Degree, Assault in the First Degree, and Attempted Murder in the Second Degree and was sentenced to a term of imprisonment. Petitioner contends that his conviction was imposed in violation of his constitutional rights and should therefore be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 14).

# II. BACKGROUND

**A.    Facts**

The following factual summary is derived from the state court records. On or about

April 7, 1997, in the early morning hours, Petitioner and four others were driving from the Bronx to Albany, New York. (T at 240-241).[1] Omar Greenidge ("Greenridge"), Tanisha Brown ("Brown"), and Akil Bomani ("Bomani") were in the back seat of the car. (T at 188, 241). Petitioner was in the front passenger seat and Donnie Jones ("Jones") was driving. (T at 188, 241, 250). The four males in the car had been in a disagreement about a missing eighth of an ounce of crack cocaine and $7,000 in cash. (T at 192-193, 242). As the car was nearing the Colonie Street off-ramp, Petitioner pulled Tanisha Brown forward from the middle of the back seat into the front seat. (T at 243). She put her hands over her face, as she heard shots ring out. (T at 243-245). Both Greenidge and Bomani had been shot at close range by Petitioner. (T at 244). Bomani was shot in the chest and Greenidge was shot in the arm and shoulder blade. (T at 190). Bomani died and Greenidge survived, although suffering paralysis. Greenidge testified at trial that after Petitioner fired the shots, he stated "I seen you on the [boulevard]. Could have got you then." (T at 191).

Petitioner, Jones, and Brown left the scene. (T at 246). Later, at the hospital, Greenidge told the police that Petitioner had shot him and Bomani. (T at 202). Several months later, Petitioner was arrested. At the time of his arrest, Petitioner made statements to the police which amount to a confession. Specifically, Petitioner stated to a detective of the Albany Police Department, "Well, I'll plead to it. I did it. But my concern is, is it a capital murder case?" (T at 418).

On July 1, 1997, an Albany County Grand Jury returned a six-count indictment, which charged Petitioner and Donnie Jones with three counts of Murder in the Second

---

[1] References preceded by "T" are to the transcript pages of Petitioner's trial.

2

Degree, in violation of New York Penal Law ("NYPL") §125.25(1), §125.25(2), §125.25 (3);[2] Assault in the First Degree, in violation of NYPL § 120.10(1); Attempted Murder, in violation of NYPL § 110.00, as defined in § 125.25(1); and Attempted Robbery, in violation of NYPL § 110.00, as defined in §160.15(1).  (R at 1-6). [3]

### B.    State Trial Court Proceedings

The Honorable Thomas A. Breslin, Albany County Court Judge, presided over Petitioner's trial proceedings.[4]   The trial began on February 11, 1998. Petitioner was represented at trial by Renee McLaughlin, Esq.  On February 27, 1998, the jury found Petitioner guilty of one count of Murder in the Second Degree, Assault in the First Degree, and Attempted Murder in the Second Degree. (T at 562- 566).

On April 9, 1998, Petitioner was sentenced by Judge Breslin as a second violent felony offender to an indeterminate term of twenty-five years to life imprisonment for his conviction of Murder in the Second Degree, a determinate term of twenty-five years for his conviction of Assault in the First Degree (to run consecutive to his sentence for Murder in the Second Degree), and twenty-five years for his conviction of Attempted Murder in the Second Degree (to run consecutive to his sentence for Murder in the Second Degree, but concurrent to his conviction of Assault in the First Degree). (S at 16-17).[5]   Therefore, Petitioner's total aggregate sentence was fifty years to life imprisonment.

---

[2] Unless otherwise indicated, all references to the N.Y.P.L. are to McKinney 1998.

[3] References preceded by "R" are to the State Court record provided in this case.

[4] Petitioner was tried separately from Donnie Jones.

[5] References preceded by "S" are to the transcript pages of Petitioner's sentencing proceedings.

### C. State Appellate Proceedings

Petitioner, represented by Paul Robert Maher, Esq.[6], appealed his conviction to the Appellate Division, Third Department, of the New York State Supreme Court. Petitioner raised four arguments in support of his appeal: (1) that the evidence at trial was not clear and convincing; (2) that the rulings by the court during the suppression hearing were in favor of the prosecution in violation of equal protection; (3) that the sentences imposed by the trial judge were in violation of the New York Penal Law; and (4) that Petitioner did not receive adequate representation during the trial or during the pre-trial hearings.

In a decision issued on January 11, 2001, the Appellate Division affirmed Petitioner's conviction and sentence. People v. Walker, 719 N.Y.S.2d 322 (3rd Dep't 2001). The appeals court noted that the evidence of Petitioner's guilt was clear and convincing, that his sentence was authorized under New York law, and that the claim for ineffective assistance of counsel was meritless. Id. Additionally, the appeals court found that although Petitioner asserted that the rulings by the trial court during the suppression hearing favored the prosecution, he failed "to identify any specific instances in this regard." Id. at 698.

Petitioner's application for leave to appeal to the Court of Appeals was denied on June 19, 2001. People v. Walker, 96 N.Y.2d 869 (2001).

### D. Federal Habeas Corpus Proceedings

---

[6]Mr. Maher was assigned by the court as appellate counsel for Petitioner.

4

Petitioner, proceeding *pro se*, commenced this action on June 14, 2002, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1). Petitioner asserts four grounds for habeas relief: (1) that he received ineffective assistance of trial counsel;(2) that the evidence at trial was not clear or convincing and was based on falsehoods; (3) that his sentence was illegally imposed; and (4) that the trial judge's remarks and rulings evidence bias in favor of the prosecution in violation of Petitioner's right to equal protection and due process of law. See (Docket No. 1 at 5-6). Thereafter, Respondent filed submissions in opposition. (Docket No. 7). Respondent argues that (1) Petitioner was not denied effective assistance of counsel, (2) that Petitioner's conviction was supported by legally sufficient evidence, (3) that his sentence was legal, and (4) that Petitioner was not deprived of a fair trial. (Docket No. 7).

For the reasons that follow, the Court recommends that the Petition be DENIED.

### III. DISCUSSION

**A.     Federal Habeas Corpus Standard**

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits." 28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001). The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural,

5

resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted). The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA. Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002). A presumption of correctness applies to findings by both state trial and appellate courts. Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law. A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially

indistinguishable facts." Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.     Petitioner's Claims**

As set forth above, Petitioner asserts the following four claims in support of this Petition: (1) that he received ineffective assistance of trial counsel; (2) that the evidence at trial was not clear or convincing and was based on falsehoods; (3) that his sentence was illegally imposed; and (4) that the trial judge's remarks and rulings evidence bias in favor of the prosecution in violation of Petitioner's right to equal protection and due process of law. See (Docket No. 1 at 5-6).

**1.     Ineffective Assistance of Trial Counsel**

Petitioner's first claim for habeas relief is that he received ineffective assistance of trial counsel. Specifically, Petitioner argues that his trial counsel failed to adequately review Rosario[7] material, interview exculpatory witnesses, and impeach the testimony of the prosecution's witnesses. In his Traverse, Petitioner asserts that his trial counsel failed to confront Greenidge about conflicting statements he had given. See (Docket No. 13).

In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a habeas petitioner must satisfy a two-part test. First, a petitioner must demonstrate that counsel's performance was so deficient that counsel was not functioning as "counsel" within the meaning of the Sixth Amendment to the Constitution. Id. at 688, 104 S.Ct. 2052. In other words, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." Id. Second, a petitioner must show that counsel's deficient performance prejudiced him. Id. at 694, 104 S.Ct. 2052.

To establish the "prejudice" prong of the Strickland test, a petitioner must show that a "reasonable probability" exists that, but for counsel's error, the outcome of the trial would have been different. Id. at 694, 104 S.Ct. 2052. The issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was inadequate. "[T]here is no reason for a court deciding an ineffective assistance claim to ... address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697, 104 S.Ct. 2052.

---

[7]People v. Rosario, 9 N.Y.2d 286 (1961) (holding that the prosecution must disclose all evidence that is favorable to the defendant).

In the present case, the Appellate Division concluded that "a review of the record fails to support defendant's contention that he was denied effective assistance of trial counsel." Walker, 719 N.Y.S.2d at 325.  After reviewing the record, this Court finds that Petitioner has failed to demonstrate that the Appellate Division's decision in this regard was contrary to clearly established Federal law, as determined by the Supreme Court of the United States, or based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Specifically, Petitioner cannot establish that any reasonable probability exists that he would have been acquitted but for trial counsel's alleged deficiencies.

The Appellate Division concluded "a review of the record fails to support defendant's contention that he was denied effective assistance of trial counsel.  Indeed, defendant-who was positively identified by two people with whom he traveled in a car for several hours-essentially confessed to the crimes and the few claimed deficiencies in counsel's performance do not support the conclusion that he was denied meaningful representation." Walker,  719 N.Y.S.2d at 325 (citing People v. Benevento, 91 N.Y.2d 708, 712-714, 674 N.Y.S.2d 629, 697 N.E.2d 584; People v. Baldi, 54 N.Y.2d 137, 147, 444 N.Y.S.2d 893, 429 N.E.2d 400).

This Court's review of the record also reveals that the evidence against Petitioner was overwhelming.  As stated above, two witnesses to the crime identified Petitioner as the shooter.  Additionally, as testified to at trial, when placed under arrest, Petitioner stated to a detective of the Albany Police Department, "Well, I'll plead to it.  I did it.  But my concern is, is it a capital murder case?"  (T at 418).  Given this testimony by the identification witnesses and the detective at trial, Petitioner cannot establish that but for any alleged

9

errors of his trial counsel, the outcome of his trial would have been any different. Strickland, 466 U.S. 694.[8]

Moreover, a review of the record demonstrates that Petitioner's trial counsel vigorously cross-examined the prosecution's witnesses. Additionally, trial counsel succeeded in securing acquittals for Petitioner on two counts of Murder in the Second Degree and one count of Attempted Robbery. See (T at 562-566).

Accordingly, Petitioner's claim for habeas relief on this ground should be DENIED.

### 2. Sufficiency of the Evidence

Petitioner's second ground for habeas relief is that the evidence at trial was insufficient to support his conviction. Specifically, Petitioner argues that the prosecution's expert testimony contradicted the physical evidence and that the prosecution's witnesses made conflicting statements. In keeping with the principle that *pro se* petitioners' complaints are to be considered liberally in their favor, Haines v. Kerner, 404 U.S. 519, 520 (1972), this Court will construe Petitioner's claim to be an "insufficiency of the evidence" argument.

A habeas petitioner challenging the sufficiency of the evidence bears "a very heavy burden." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir.2002) (quotation marks omitted); Einaugler v. Supreme Court of New York, 109 F.3d 836, 840 (2d Cir.1997) (quotation marks omitted). A habeas challenge to the sufficiency of the evidence "does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt

---

[8]Although Petitioner alleges that his counsel failed to review Rosario material and interview exculpatory witnesses, he offers no factual support for his claim for this Court's review. See (Docket No. 1).

beyond a reasonable doubt.'" Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781 (1979) (quoting Woodby v. INS, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis in original).

Thus, a habeas court must uphold a conviction unless, upon the record evidence adduced at trial, no rational trier of fact could have found that the prosecution established the defendant's guilt beyond a reasonable doubt. See id.; accord Ponnapula, 297 F.3d at 179 ("[W]e review the evidence in the light most favorable to the State and [hold that] the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.").

In making this assessment, the reviewing court may neither "disturb the jury's findings with respect to the witnesses' credibility," United States v. Roman, 870 F.2d 65, 71 (2d Cir.1989), nor make its own "assessments of the weight of the evidence[.]" Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir.1996). Thus, under this standard, a "federal habeas court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir.1994) (quoting Jackson, 443 U.S. at 326, 99 S.Ct. 2781).

In the present case, one of the shooting victims, Omar Greenidge, and eyewitness Tanisha Brown, testified that Petitioner shot both Greenidge and Bomani at close range, establishing his murder and attempted murder convictions. (T at 191, 243-245). As noted above, when placed under arrest, Petitioner stated to a detective of the Albany Police

Department, "Well, I'll plead to it. I did it. But my concern is, is it a capital murder case?" (T at 418). There was also expert testimony at trial establishing that the shooter was less than two feet from both victims, based upon an examination of the victim's shirt and gun powder residue. (T at 383).

Additionally, with respect to Petitioner's conviction for assault in the first degree, the Appellate Division noted,

> one bullet had to be surgically removed from Greenidge's arm and the other bullet remained lodged in his spine, causing life-threatening injury resulting in paralysis and requiring long-term rehabilitation. This evidence was ample and sufficient to establish defendant's intentional infliction of serious physical injury by means of a handgun, a deadly weapon, as required to sustain the conviction for assault in the first degree.

People v. Walker, 719 N.Y.S.2d at 324.

After reviewing the foregoing evidence, the Court finds that the Appellate Division's conclusion in this regard was neither contrary to, nor an unreasonable application of, United States Supreme Court due process precedent. Moreover, it was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could easily have found Petitioner guilty. See Ponnapula, 297 F.3d at 179

As such, Petitioner's claim for relief based upon alleged insufficiency of the evidence should be DENIED.

### 3. Sentence

Petitioner's third claim for habeas relief is that his sentence was illegally imposed.

Petitioner was sentenced as a second violent felony offender to an indeterminate term of twenty-five years to life imprisonment for his conviction of Murder in the Second Degree, a determinate term of twenty-five years for his conviction of Assault in the First Degree (to run consecutive to his sentence for Murder in the Second Degree), and twenty-five years for his conviction of Attempted Murder in the Second Degree (to run consecutive to his sentence for Murder in the Second Degree, but concurrent to his conviction of Assault in the First Degree).  (S at 16-17).

Petitioner claims that the shots he fired were the result of one single act and therefore, all of his sentences should have been concurrent.  See (Docket No. 1 at 6).  He contends that it is only appropriate to impose consecutive sentences where there are two or more separate and distinct acts involved.  Petitioner asserts that his firing of the gun three times in rapid succession is one act.

The Penal Law provides that sentences must run concurrently when two or more offenses are committed through a single act or through an act which itself constituted one of the offenses and also was a material element of the other.  See N.Y. Penal Law § 70.25(2) (emphasis added); see also People v. Sturkey, 77 N.Y.2d 979, 980-81, 571 N.Y.S.2d 898, 575 N.E.2d 384 (1991) ("Under the facts of this case, the robbery and possession offenses were committed through the single act of seizing the gun. Thus, defendant was properly convicted of both robbery and criminal possession of a weapon but the sentences for the two offenses must be concurrent under section 70.25(2) of the Penal Law[.]").

However, trial courts retain the discretion to impose consecutive sentences when separate offenses are committed through separate acts, even though they are part of a

single transaction. People v. Brown, 80 N.Y.2d 361, 364, 590 N.Y.S.2d 422, 604 N.E.2d 1353 (1992) (citations omitted). An "act" is defined by the Penal Law as a "bodily movement." N.Y. Penal Law § 15.00(1).

New York law holds that the shooting of two victims constitutes separate and distinct acts, for which consecutive sentences are appropriate. See People v. Perez, 633 N.Y.S.2d 284 (1st Dep't 1995)(stating that the shooting of two victims constitutes separate and distinct acts punishable by consecutive sentences); see also, People v. Brathwaite, 63 N.Y.2d 839, 843 (1984) (where two or more people are shot, separate acts exist, "there is no contention that it was the firing of the same shot that killed both the [victims]"); Oyague v. Artuz, 393 F.3d 99, 106 (2d Cir. 2004)(quoting Brathwaite). Petitioner shot both Bomani and Greenidge, therefore he committed two separate acts punishable by consecutive sentences for those acts.

When reviewing this claim, the Appellate Division stated:

> [C]ontrary to appellate counsel's assertions, the imposition of consecutive sentences for the intentional murder of Bomani (Penal Law § 125.25[1]) and the intentional assault (Penal Law § 120.10[1]) and attempted murder of Greenidge is authorized by Penal Law § 70.25 ( see, People v. Brathwaite, 63 N.Y.2d 839, 843, 482 N.Y.S.2d 253, 472 N.E.2d 29). To be sure, defendant's successive, intentional conduct in shooting Bomani and twice shooting Greenidge constituted distinct and separate acts, and the act of shooting Bomani was not a material element of either the assault or attempted murder of Greenidge (see, Penal Law § 70.25[2]; § 15.00[1]; People v. Truesdell, 70 N.Y.2d 809, 523 N.Y.S.2d 429, 517 N.E.2d 1315; People v. Walker, 274 A.D.2d 600, 711 N.Y.S.2d 535; People v. Porter, 256 A.D.2d 363, 364, 681 N.Y.S.2d 348, lv. denied 93 N.Y.2d 976, 695 N.Y.S.2d 62, 716 N.E.2d 1107; People v. Castillo, 247 A.D.2d 306, 668 N.Y.S.2d 884, lv. denied 92 N.Y.2d 849, 677 N.Y.S.2d 79, 699 N.E.2d 439; People v. Fields, 236 A.D.2d

> 555, 654 N.Y.S.2d 644, lv. denied 89 N.Y.2d 1092, 660 N.Y.S.2d 386, 682 N.E.2d 987; People v. Chandler, 106 A.D.2d 677, 678, 484 N.Y.S.2d 142). Moreover, given defendant's felony record and the brutal nature of these crimes which ended one young life and severely impacted another, we find no abuse of discretion in County Court's imposition of the maximum consecutive sentences (see, People v. Dolphy, 257 A.D.2d 681, 685 N.Y.S.2d 485, lv. denied 93 N.Y.2d 872, 689 N.Y.S.2d 434, 711 N.E.2d 648).

People v. Walker, 719 N.Y.S.2d at 325.  This Court finds that the Appellate Division's holding with respect to this claim was neither contrary to, nor an unreasonable application of established federal law nor was it based upon an unreasonable determination of the facts based upon the evidence presented at trial.  Indeed, it is only logical that the act of shooting and killing Bomani was a separate criminal act and not a material element of the assault or attempted murder against Greenidge.

Accordingly, Petitioner's claim for habeas relief on this ground should be DISMISSED.

### 4. Judicial Misconduct

Petitioner's last claim for habeas relief is that the trial court's remarks and rulings were biased in favor of the prosecution, in violation of Petitioner's right to equal protection and due process of law.  Petitioner offers no factual support for this argument in his Petition.

To establish that a judge has engaged in misconduct sufficient to warrant redress, a party must typically demonstrate that the judge displayed "such a high degree of favoritism or antagonism as to make fair judgment impossible." Liteky v. United States, 510 U .S. 540, 555 (1994); see also Withrow v. Larkin, 421 U.S. 35, 47 (1975) (to succeed on

a judicial misconduct claim, a party must "overcome a presumption of honesty and integrity in those serving as adjudicators"). In reviewing a judicial misconduct claim, courts are to presume that public officials have properly discharged their official duties. See Bracy v. Gramley, 520 U.S. 899, 909 (1997) (internal quotations and citations omitted).

To prevail on a claim based on judicial misconduct, a habeas petitioner must demonstrate that the trial judge engaged in conduct so "fundamentally unfair" that it violated the due process requirements of the United States Constitution. See Daye v. Attorney Gen. of N.Y., 712 F.2d 1566, 1570-71 (2d Cir.1983); Salahuddin v. Strack, No. 97-CV-5789, 1998 WL 812648, at *8 (E.D.N.Y. Aug. 12, 1998). A showing that the judge's conduct was merely "undesirable" is not sufficient. See Daye, 712 F.2d at 1572.

Indeed, in the Second Circuit, "the habeas petitioner faces a high burden to show a constitutional deprivation when the interference of the state trial judge is at issue." A.S. Goldmen, Inc. v. Phillips, 05-Civ-4385, 2006 WL 1881146, at *40 (S.D.N.Y. July 6, 2006). "A trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree before the risk of either impaired functioning of the jury or lack of the appearance of a neutral judge conducting a fair trial exceeded constitutional limits." Daye v. Attorney General, 712 F.2d 1566, 1572 (2d Cir. 1983); see also Reid v. Phillips, 04 Civ. 1338, 2004 WL 1920218 at *4 (S.D.N.Y. Aug. 26, 2004) ("A criminal defendant faces a high hurdle to establish a judge's partiality based on comments made at trial.").

As noted above, Petitioner did not offer any factual support in his Petition with respect to this claim. A review of the state court record indicates that Petitioner argued to the Appellate Division that the trial court was "impatient with the defense counsel."

Petitioner noted several instances where the trial court overruled defense counsel's objections and one instance in which the trial court overruled counsel's objection and further opined that the prosecutor's questioning was proper.[9]

When reviewing this claim, the Appellate Division found that the "rulings and remarks identified by defendant as objectionable or improper [are] neither unfair nor reflective of bias or hostility and did not deprive defendant of a fair trial" People v.Walker, 719 N.Y.S.2d at 325 (citing People v. Tunstall, 197 A.D.2d 791, 792, 603 N.Y.S.2d 86, lv. denied 83 N.Y.2d 811, 611 N.Y.S.2d 147, 633 N.E.2d 502)).

This Court finds that the Appellate Division's holding in this regard was neither contrary to, nor an unreasonable application of, established federal law nor was it based upon an unreasonable determination of the facts based upon the evidence presented at trial.  In fact, with respect to bias claims based on remarks made by federal trial judges, the Supreme Court has held:

> [J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.... *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune.

---

[9]The prosecutor asked its expert witness whether, based on her examination of the wounds and injuries, she had an opinion as to whether the injuries were "consistent with someone firing a gun from the front passenger seat." Defense counsel objected, arguing a lack of proper foundation.  The trial court overruled the objection and stated "Mr. Reilly [the prosecutor] asked based upon that[,] does she have an opinion.  You'll certainly have an opportunity to cross examine.  He didn't ask what the opinion was, [only] does she have one." (T. 445-446).

Liteky v. United States, 510 U.S. 540, 555-56, 114 S.Ct. 1147, 1157 (1994) (emphasis in original); see also Welch v. Artus, 04-CV-205, 2007 WL 949652, at *26-27 (W.D.N.Y. Mar. 29, 2007). Moreover, it is well established that trial courts have broad discretion in making evidentiary rulings, and that federal habeas courts "do not sit to review state court action on questions of the propriety of the trial judge's action in the admission of evidence." Riggins v. Nevada, 504 U.S. 127, 147 (1992)); Jenkins v. Bara, 663 F.Supp. 891, 899 (E.D.N.Y.1987) ("Generally, erroneous evidentiary rulings of a state trial court do not rise to the level of a constitutional deprivation upon which a writ of habeas corpus may be issued.").

In any event, Judge Breslin instructed the jury not to draw any inferences from his rulings or remarks regarding the prosecution or defense. (T at 503-504). In light of the well-established presumption that jurors follow their instructions, Barnard v. Burbary, 452 F. Supp. 2d 178, 193 (W.D.N.Y. 2006), this instruction served as an additional safeguard of Petitioner's right to a fair trial.

Accordingly, Petitioner's fourth ground for habeas relief should be DENIED.

### IV. CONCLUSION

For the reasons stated above, the Court recommends Gerald Walker's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied, and that his petition be dismissed. In addition, because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. See 28 U.S.C. § 2253(c)(2) (1996).

        Respectfully submitted,

_____
Victor E. Bianchini
United States Magistrate Judge

DATED:    May 7, 2007

           Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.[10]

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1©.**

---

[10] According to the New York State Department of Correctional Services' official website, Petitioner is presently incarcerated in the Attica Correctional Facility, therefore, the correct Respondent is James Conway, the Superintendent of the Attica Correctional Facility. 28 U.S.C. § 2243. In light of Petitioner's *pro se* status, the fact that this will not prejudice Respondent, and in the interests of court efficiency, this Court will deem the Petition amended to change the name of Respondent to James Conway.
    The Clerk of the Court is directed to terminate Thomas Ricks as Respondent, add James Conway, Superintendent of the Attica Correctional Facility, as the new Respondent, and revise the caption of this case accordingly.

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1©.

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

May 7, 2007

/s/ Victor E. Bianchini
Victor E. Bianchini
United States Magistrate Judge